IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE BOBBIT, | ) |
|        Petitioner, | ) No. CV-06-2850 RHW JPH |
| | ) |
| v. | ) REPORT AND RECOMMENDATION TO |
| | ) DENY WRIT OF HABEAS CORPUS |
| K. C. KRAMER, et al., | ) |
| | ) |
|        Respondents. | ) |
| | ) |
| | ) |
| | ) |

**BEFORE THE COURT** is an amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody (Ct. Rec. 20) and Respondent's Answer (Ct. Rec. 25).  Petitioner appears pro se.  Respondent is represented by Deputy Attorney General Wanda Hill Rouzan.  This matter was heard without oral argument.  After careful review and consideration of the pleadings submitted, it is recommended that the Petition for Writ of Habeas Corpus be **denied.**

At the time his petition was filed, Petitioner was in custody in Old Folsom State Prison in Folsom, California, pursuant to his 2005 Sacramento County conviction for selling  cocaine and offering to sell cocaine, with an admission that he had suffered a

prior serious felony conviction. (Lodged Doc. 1 at 1-2.) Petitioner, represented by counsel, pleaded no contest to these two counts and admitted the prior serious conviction in exchange for dismissal of three counts involving controlled substances and additional associated enhancements.  Defendant entered his plea on the basis of a negotiated sentence with a maximum of twelve years and eight months.  (Lodged Doc. 19 at 11-14, 17-18.) He faced a sentence of 25-years-to-life, or more, if convicted after trial on all five original counts and enhancements.  On February 2, 2005, defendant entered his plea.  On March 5, 2005, the court accepted the parties' plea agreement and imposed a sentence consistent with the agreement. (Lodged Doc. 19 at 20-23.) Petitioner raises claims of vindictive prosecution, ineffectiveness of trial and appellate counsel, and *Blakely*[1]-based sentencing error. (Ct. Rec. 20.)

**I.  BACKGROUND**

**A.  Factual History**

     The prosecutor provided the factual basis for Mr. Bobbit's pleas:

> PROSECUTOR: As to Count 1, on August 15th, 2003, in the County of Sacramento, the defendant sold a usable quantity of cocaine to a confidential informant who was working under the supervision of the United States Drug Enforcement Administration.
>
> As to Count 2, between the dates of August 15th, 2003, and September 26th, 2003, the defendant engaged in a series of negotiations with an undercover investigator from the Sacramento County DA's office in which he offered to sell a quantity of cocaine. The bulk of those negotiations took place in Sacramento County.
>
> And then as to prior conviction number 1, on or about June

_____

     [1]*Blakely v. Washington*, 542 U.S. 296 (2004).

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 2 -

14th, 1989, in Yolo County, he was convicted of the crime of residential burglary in violation of Penal Code Section 459.

(Lodged Doc. 19 at 15.)

At the preliminary hearing, the trial court found probable cause to believe defendant had committed the crimes. (Lodged Doc. 18 at 134.)

**B.  Procedural History**

As noted, on February 2, 2005, petitioner withdrew his not guilty plea and entered a counseled plea of no contest to one count of selling cocaine[2] and one count of offering to sell cocaine[3] and admitted that he had suffered a prior serious felony conviction.  (Lodged Docs. 2,19 at 17.)  At the conclusion of the hearing Mr. Bobbit was found guilty of the charges and the enhancement was found true.  (Lodged Document 19 at 17-18.) Sentence was imposed on March 2, 2005.  (Lodged Document 19 at 20-23.)

Prior to accepting the change of plea, the trial court advised Mr. Bobbit that if the court followed the plea agreement, he could be sentenced to a maximum period of twelve years plus eight months. (Lodged Doc. 19 at 13.)  In its May 11, 2007, opinion denying Mr. Bobbit's state habeas petition, the superior court stated:

> petitioner was charged with five substantive offenses involving controlled substances, five Penal Code § 667.5(b) prior-prison-term enhancements, and three "strike priors" based on what may have been three different residential burglaries that were brought

---

[2]in violation of Cal. Health & Saf. Code § 11352

[3]in violation of Cal. Health and Saf. Code § 11352 (a)

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 3 -

and tried together in one proceeding in Yolo County
Superior Court. As such, petitioner faced a potential
25-years-to-life sentence, or greater.

To avoid the life sentence, petitioner entered a change
of plea on February 2, 2005, in which he pleased no
contest to two of the substantive charges and admitted
one "strike prior" conviction and Penal Code § 667.5(b)
enhancement, in exchange for a promised lid of 12 years
8 months and a dismissal of the remaining charges. In
accepting the plea, the court first advised petitioner
of his "right to a jury trial," which petitioner then
waived.

On March 5, 2005, the trial court imposed the upper
term of five years on the first count, doubled it to
10 years pursuant to the one "strike prior" that was
admitted, and imposed a consecutive one-third-the-
midterm term of 2 years 8 months for the second count,
for an aggregate term of 12 years 8 months,
the stipulated lid.

(Lodged Doc. 13 at 1.)

This procedural history followed:

1. Mr. Bobbit filed a brief in the Third Appellate District
on October 21, 2005, in support of his appeal. (Lodged Doc. 1.)

2. The Third Appellate District dismissed Mr. Bobbit's first
appeal in a published opinion issued April 7, 2006. (Lodged Doc.
2, *People v. Bobbit*, 138 Cal. App. 4th 445 (2006.)

3. Mr. Bobbit filed a petition for review in the California
Supreme Court on May 16, 2006. (Lodged Doc. 3.)

4. The California Supreme Court summarily denied review on
June 21, 2006. (Lodged Doc 4.)

5. Mr. Bobbit filed a petition for writ of habeas corpus in
superior court on October 4, 2006. (Lodged Doc. 5.)

6. The superior court denied the petition in a reasoned
decision issued November 27, 2006. (Lodged Doc. 6.)

7. Mr. Bobbit filed a petition for a writ in the Third

Appellate District on December 18, 2006.  (Lodged Doc. 7.)

8. Petitioner filed a motion for an evidentiary hearing on December 18, 2006. (Lodged Doc. 8.)

9. The Third Appellate District denied the petition without comment on January 18, 2007. (Lodged Doc. 9.)

10. Mr. Bobbit filed a petition for a writ in the California Supreme Court on February 21, 2007.  (Lodged Doc. 10.)

11. The state supreme court summarily denied the petition on July 18, 2007. (Lodged Doc. 11.)

12. Mr. Bobbit filed a petition for a writ in superior court on March 14, 2007. (Lodged Doc. 12.)

13. The superior court denied the petition on May 11, 2007, in a reasoned decision.  (Lodged Doc. 13.)

14. Petitioner filed a petition for a writ in the Third Appellate District on May 30, 2007. (Lodged Doc. 14.)

15. On June 7, 2007, the Third Appellate District denied the petition without comment.  (Lodged Doc. 15.)

16. Mr. Bobbit filed a petition in the state supreme court on June 21, 2007, for which no disposition is available.  (Lodged Docs. 16, 17.)

On August 17, 2007, Mr. Bobbit filed a second amended (current) petition for writ of habeas corpus with this Court. (Ct. Recs. 1, 20.)

## C.  Federal and state claims

In his federal habeas petition, Mr. Bobbit raises the following claims:

Federal habeas claim one: Mr. Bobbit's rights to due process under

the Fifth and Fourteenth Amendments to the United States Const.
were violated by vindictive prosecution when the prosecutor
increased the agreed sentence from six years to twelve years eight
months based on Mr. Bobbit's motion for compassionate release.
(Ct. Rec. 20 at 5.)

Federal habeas claim two: Mr. Bobbit's Sixth Amendment rights were
violated trail counsel's ineffective assistance when counsel
failed to advise Mr. Bobbit of the consequences of his motion for
compassionate release. (Ct. Rec. 20 at p. 5.)

Federal habeas claim three: Mr. Bobbit's trial counsel was
ineffective because he did not "object to the prosecution's
increase in the negotiated punishment." (Ct. Rec. 20 at 6.)

Federal habeas claim four: Mr. Bobbit's rights under the Sixth and
Fourteenth Amendments were violated by the court's imposition of
an upper term sentence in violation of *Blakely.*
(Ct. Rec. 20 at 6.)

Federal habeas claim five: Mr. Bobbit did not "waive or forfeit
his right to a jury trial on aggravated circumstances" because it
is a right which is not forfeited by failing to object. (Ct. Rec.
20 at 7.)

Federal habeas claim six: Mr. Bobbit's trial counsel was
ineffective (in violation of the Sixth Amendment) because he made
no demand for a jury trial on aggravating circumstances or because
he failed to object to a judicial determination of aggravating
circumstance. (Ct. Rec. 20 at 7.)

In the state's highest court, Mr. Bobbit raised the following
issues, renumbered here for comparability to federal claims:

State court claim 1: Vindictive prosecution occurred when the prosecutor changed his sentencing recommendation.  This issue was not raised on direct appeal in the state's highest court.  (See Lodged Doc. 3).  Mr. Bobbit later raised the issue in his habeas petition to the state's highest court invoking the same claim based on the same facts as in federal court and he invoked federal protections. (Lodged Doc. 10.)

State court claim 2. Trial counsel was ineffective when he failed to advise Mr. Bobbit of the consequences of moving for temporary release (federal habeas claim two).  This claim  was not raised on direct appeal. (See Lodged Doc. 3.) Mr. Bobbit included this claim in state court in his habeas petition to the California Supreme Court, based on the same facts as in federal court, and he invoked federal law. (Lodged Doc. 10 at 3.)

State court claim 3: Trial counsel was ineffective for failing to object to the prosecutor's negotiated increased sentencing recommendation (federal claim three).  This claim was also not raised on direct appeal but raised it in the state habeas petition filed in the state's highest court; the state claim  was based on the same facts as in the federal petition, and invoked federal law.  (*Cf*. Lodged Doc. 3 *with* Lodged Doc. 10.)

State court claim 4: Mr. Bobbit's sentence was imposed in violation of *Blakely* (federal habeas claim four), because the court rather than a jury determined the aggravating circumstances. Mr. Bobbit raised this claim on direct appeal (Lodged Doc. 3 at 7-8, numbered therein as claim 2; renumbered here for readability) based on the same facts and invoking federal law.

State court claim 5: Mr. Bobbit did not waive or forfeit his right to a jury trial on aggravated circumstances because it is a right that cannot be waived or forfeited (federal habeas claim five). This claim was raised on direct appeal based on the same facts and invoking federal law. (Lodged Doc. 3 at 9-10.)

State court claim 6: If Mr. Bobbit's right to a jury determination of aggravating circumstances was waived, it was due to ineffective assistance of trial counsel. (Lodged Doc. 3 at 11-13.) Mr. Bobbit raised this claim based on the same facts and federal law in both his federal habeas petition (Ct. Rec. 20 at 7) and in the state's highest court on direct review (Lodged Doc. 3 at 11-13.)

Mr. Bobbit argued in his first petition for review in the California Supreme Court that he was not required to obtain a certificate of probable cause (Lodged Doc. 3 at 4-6). He does not raise this issue in his federal habeas petition. (Ct. Rec. 20.)

Thus, Mr. Bobbit's federal habeas petition raises some of the issues presented to the state's highest court on direct appeal (claims 4-6), while others were not presented to the California Supreme Court until collateral state habeas review (claims 1-3).

**II. EXHAUSTION OF STATE REMEDIES**

As a preliminary issue, Petitioner must have exhausted his state remedies before seeking habeas review. The federal courts are not to grant a writ of habeas corpus brought by a person in state custody pursuant to a state court judgment unless "the applicant has exhausted the remedies available in the courts of the State." *Wooten v. Kirkland*, 540 F.3d 1019,

1023 (9th Cir. 2008), citing 28 U.S.C. §2254(b)(1)(A). "This
exhaustion requirement is 'grounded in principles of comity' as
it gives states 'the first opportunity to address and correct
alleged violations of state prisoner's federal rights.'" *Id.*,
citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

In order to exhaust state remedies, a petitioner must have
raised the claim in state court as a federal claim, not merely as
a state law equivalent of that claim. See *Duncan v. Henry*, 513
U.S. 364, 365-66 (1995). The state's highest court must be
alerted to and given the opportunity to correct specific alleged
violations of its prisoners' federal rights. *Wooten,* 540 F.3d at
1023*,* citing *Picard v. Connor*, 404 U.S. 270, 275 (1971). To
properly exhaust a federal claim, the petitioner is required to
have presented the claim to the state's highest court based on the
same federal legal theory and the same factual basis as is
subsequently asserted in federal court. *Hudson v. Rushen*, 686 F.
2d 826, 829-30 (9th Cir. 1982), *cert. denied*, 461 U. S. 916 (1983).

Respondent may waive the exhaustion requirement. *See* 28
U.S.C. § 2254 (b)(3) ("A state shall not be deemed to have waived
the exhaustion requirement or be estopped from reliance on the
requirement unless the state, through counsel, expressly waives
the requirement.") Respondent's answer to the petition
affirmatively alleges "Petitioner has exhausted his state
remedies, as required by § 2254(b), based on his having
procedurally defaulted those claims in state court." (Ct. Rec. 25
at 2.) This clearly constitutes an express waiver by counsel of
the exhaustion requirement of all claims. *See Dorsey v. Chapman*,

262 F. 3d 1181, 1187 at n. 8 (11th Cir. 2001). Generally, a habeas court may, in its discretion reach the merits of a habeas claim or may insist on exhaustion of state remedies despite a State's waiver of the defense. *See Boyd v. Thompson*, 147 F. 3d 1124, 1127 (9th Cir. 1998). The court's discretion should be exercised to further the interests of comity, federalism, and judicial efficiency. *See id.* It appears to advance the interests of the parties and judicial efficiency (without unduly offending the interests of either comity or federalism) for the Court to decide petitioner's claim is exhausted and may, unless otherwise barred, be considered on the merits.

Respondent concedes Petitioner has exhausted his state remedies, based on procedural default, and asks this court to dismiss the petition as procedurally barred. Alternatively, Respondent asks that the petition be denied on the merits. (Ct. Rec. 25 at 2, 5.)

The court will assume for purposes of habeas review that Mr. Bobbit's claims have been exhausted in the state's highest court. However, even if the reviewing court disagrees, the claims are barred by procedural default, as noted below.

**III. PROCEDURAL DEFAULT**

Petitioner has arguably exhausted his federal habeas claims; however, they are barred by procedural default. With respect to Mr. Bobbit's federal habeas claims, the "procedural default doctrine 'bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'"

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS

*Calderon v. United States District Court*, 96 F. 3d 1126, 1129 (9th

Cir. 1996)(quoting *Coleman v. Thompson*, 501 U.S. 722, 729-30

(1991).  This doctrine applies when: (1) a state court has been

presented with a federal claim, but declined to reach the issue

pursuant to an independent and adequate state procedural rule, or

when (2) it is clear that the state court would hold the claim

procedurally barred.  *Harris v. Reed*, 489 U.S. 255, 260-263

(1989).  This Court may not reach the merits of procedurally

defaulted claims, that is, claims "in which the petitioner failed

to follow applicable state procedural rules in raising the

claims"[.] *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992), citing

*Murray v. Carrier*, 477 U.S. 478 (1986).

     Mr. Bobbit's federal claims 4, 5 and 6 are procedurally

defaulted because he failed to obtain a certificate of probable

cause as required by California state law. (Lodged Doc. 2 at 2-5.)

As the Third Appellate District noted in its published opinion on

direct appeal:

> The court sentenced defendant to the maximum term permitted
> under the pleas agreement. Defendant
> thereafter filed a notice of appeal in which he
> appeals "from all pre-trial rulings, all rulings
> made at the time of defendant's plea and the Court's
> sentence."  Defendant did not seek, nor was he granted,
> a certificate of probable cause. (Pen. Code § 1237.5)[4]

---

[4](Court's fn 1) Penal Code section 1237.5 provides, "No appeal
shall be taken by the defendant from a judgment of conviction upon
a plea of guilty or nolo contendere, or a revocation of probation
following an admission of violation, except where both of the
following are met: [¶] (a) The defendant has filed with the trial
court a written statement, executed under oath or penalty of
perjury showing reasonable constitutional, jurisdictional, or other
grounds going to the legality of the proceedings. [¶] (b) The trial
court has executed and filed a certificate of probable cause for
such appeal with the clerk of the court."

1

2      The ultimate issue raised on appeal relates to the
       trial court's authority to impose an upper term sentence
3      in light of *Blakely v. Washington* (2004) 542 U.S. 296.

4      This argument is not cognizable on appeal because
       defendant did not obtain a certificate of probable
5      cause.  "'[A] challenge to a negotiated sentence
       imposed as part of a plea bargain is properly viewed
6      as a challenge to the validity of the plea itself' and
       thus requires a certificate of probable cause.
7      [Citation.]" (*People v. Shelton* (2006) 37 Cal.4th 759,
       766 (*Shelton*), quoting *People v. Panizzon* (1996) 13
8      Cal.4th 68, 79.)  "[T]he specification of a maximum
       sentence or lid in a plea agreement normally implies
9      a mutual understanding of the defendant and the prosecutor
       that the specified maximum term is one that the trial
10     court may lawfully impose and also a mutual understanding
       that, absent the agreement for the lid, the trial court
11     might lawfully impose an even longer term." (*Shelton*,
       *supra*, at p. 768) "[A] provision recognizing the
12     defendant's right to 'argue for a lesser term' is
       generally understood to mean only that the defendant
13     may urge the trial court to exercise its sentencing
       discretion in favor of imposing a punishment that is
14     less severe than the maximum punishment authorized by
       law." (*Ibid.*)  "Of course, a prosecutor and a defendant
15     may enter into a negotiated disposition that expressly
       recognizes a dispute or uncertainty about the trial
16     court's authority to impose a specified maximum sentence--
       because of Penal Code section's 654's multiple punishment
17     prohibition *or for some other reason*-- and preserves the
       defendant's right to raise that issue at sentencing and on
18     appeal."  (*Shelton, supra*, at p. 769, italics added &
       omitted.)  To the extent some ambiguity exists regarding the
19     meaning of the parties' agreement, a court should "begin with
       the language of the plea agreement concerning sentencing, as
20     the trial court recited it on the record" (*id.* at p. 767),
       since "[a] negotiated plea agreement is a form of contract,
21     and it is interpreted according to general contract
       principles. [Citations.]" (*Ibid.*)

22     The parties did not execute a written plea agreement.
       In reciting the terms of the agreement at the change of
23     plea hearing, the court stated that, "defendant's
       sentencing exposure will be 12 years, 8 months at the
24     reduced credit rate pursuant to the three strikes law."
       During colloquy with defendant, the court reiterated,
25     "Further agreement is that you would be pleading for
       a top sentence of 12 years, 8 months, that would be
26     a lid. You could receive something less than that 12
       year, 8 month sentence but you could also receive that
27     12 year, 8 month sentence. [¶] Do you understand that?"
       Defendant responded, "Yes, Your Honor."  At the
28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 12 -

1    sentencing hearing, defense counsel asked the court
     to impose a midterm sentence rather than the upper term
2    the probation department recommended for count one.
     Defense counsel did not, however, argue that the court
3    did not have the authority to impose an upper term
     sentence absent jury findings that one or more
4    aggravating factors existed. *Blakely v. Washington*,
     supra, 542 U.S. 296 was decided on June 24, 2004.
5    The negotiated disposition was placed on the record on
     February 2, 2005, and sentencing took place on March 2,
6    2005, both of which occurred well after the highly
     publicized decision, which dispels any doubt that the
7    issue was not preserved through the oversight of
     defense counsel.
8
     On this record, we concluded as a matter of law that
9    the plea agreement did not preserve, either at sentencing
     or on appeal, the issue that the court did not have the
10   authority to impose an upper term sentence in the absence
     of a jury finding of one or more aggravating
11   circumstance(s).[5]  Without a certificate of probable
     cause, the appeal must be dismissed.
12
13   (Lodged Doc. 2 at 2-5, *People v. Bobbit*, 138 Cal.App.4th 445

     (2006.)
14
15        Mr. Bobbit's federal habeas claims 4, 5 and 6 (*Blakely*
16   claims) are clearly procedurally defaulted because he failed to
17   obtain a certificate of probable cause as required by
18   California state law. The reviewing court should dismiss
19   federal habeas claims 4,5 and 6 because they are procedurally
20   barred from habeas consideration.
21        Similarly, Mr. Bobbit's federal habeas claims 1,2 and 3
22   (vindictive prosecution claims) should be dismissed as
23   procedurally barred, due to Mr. Bobbit's failure to comply with
24   California's state procedural rules.  The superior court set
25   out the relevant facts related to these issues when it denied
26
     _____
27        [5](Court's fn 2) Even if we were to decide the matter on
     the merits, we would reject defendant's argument based on
28   People v. Black (2005) 35 Cal.4th 1238, 1244, 1254.

Mr. Bobbit's state habeas petition:

> Petitioner challenges the judgment. . . Specifically, he claims that the prosecutor engaged in vindictive prosecution, in changing the offer of 6 years in state prison to instead be that of 12 years, 8 months, after petitioner had filed a motion to be allowed to attend his father's funeral. He claims that his appellate counsel was ineffective in failing to raise the claim on appeal, and that his trial counsel was ineffective in failing to advise him that the plea offer would be withdrawn if he moved for release to attend his father's funeral.
>
> There is no presumption of vindictiveness in this case, from the prosecutor's increase in the punishment term of the plea bargain offered to petitioner, as this the change in the plea bargain offer occurred at a pretrial stage (*People v. Edwards* [citation omitted][no presumption of vindictiveness when jeopardy has not yet attached].
>
> . . . Nor is this claim cognizable on habeas corpus, in any event. Petitioner does not claim that his <u>trial</u> <u>counsel</u> was ineffective in failing to file a vindictive prosecution claim.  As such, because the claim was not raised in the trial court, and is not now couched in ineffective assistance of counsel terms, it is barred from habeas corpus review (*In re Seaton* (2004) 34 Cal.4th 193).
> For all of these reason, the petition is denied.

(Lodged Doc. 6 at 1, 3)(original emphasis).

The undersigned agrees that plaintiff's claims one through three are barred by procedural default and should be dismissed.

## III. AEDPA

The current federal petition was filed December 18, 2006, and amended twice.  (Ct. Recs. 1, 10, 20.)  Its disposition is therefore governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), effective April 24, 1996.

In the event the court finds petitioner's claims are not barred by procedural default, the merits of his claims are discussed.

## IV. MERITS

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 14 -

**A.  Standard of Review**

Under AEDPA, a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254 (d). "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), referring to *Weeks v. Angelone*, 528 U.S. 225 at 237 (2000). Where no decision of the Supreme Court "squarely addresses" an issue or provides a "categorical answer" to the question before the state court, § 2254(d)(1) bars relief. *Moses v. Payne*, 543 F. 3d 1090, 1098 (9th Cir. 2008), relying on *Wright v. Van Patten*, __ U.S. __, 128 S. Ct. 743, 746 (2008); *Carey v. Musladin*, 549 U.S. 70 (2006).

Federal courts apply the *Brecht* standard to determine whether a constitutional error was harmless. *Fry v. Pliler,* 551 U.S. 112 (2000); *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637 ((citing *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)); *Bains v. Cambra*, 204 F. 3d 964, 977-78 (9th Cir.) *cert. denied*, 531 U.S. 1037 (2000)). That is, the

Petitioner is entitled to habeas relief only if he can show that any constitutional violation "resulted in actual prejudice." *Brecht,* 507 U.S. at 638 (internal citation omitted).

**B.  Federal habeas claim one: vindictive prosecution; claims two and three: ineffectiveness related to vindictive prosecution**

Petitioner's first federal habeas claim is that the state courts erred by denying his claim of vindictive prosecution. (Ct. Rec. 20 at 5.) Respondent answers that the issue was waived by Mr. Bobbit's failure to raise it in a pre-trial motion to dismiss as required by *People v. Edwards*, 54 Cal.3d 787, 827-828 (1991); see Lodged Doc. 6 at 1. (Ct. Rec. 25 at 13.) Respondent notes that this is the basis on which the superior court found the claim barred from habeas review under *In re Seaton*, 34 Cal.4th 193 (2004); Lodged Doc. 6 at 3. (Ct. Rec. 25 at 13.)

In federal claims two and three, Mr. Bobbit alleges ineffective assistance related to his claim of vindictive prosecution. In its review of Mr. Bobbit's state habeas petition, the superior court further analyzed these claims:

> Nor does petitioner show that the offer was in fact changed specifically because he filed the particular motion. He claims that his trial counsel had received a threat of withdrawal of the plea offer if he filed the motion for release, but does not attach reasonably available documentary evidence that specifically shows that the threat was thereafter immediately carried out. Rather, he attaches to the petition only a memorandum from an investigator summarizing petitioner's own statements, that the prosecutor did not change the offer until October 11, 2004, and a letter from trial counsel stating that the prosecutor had been willing to agree to petitioner's release if petitioner entered a plea first but that if petitioner did not plead first and moved for release, the six-year deal would be off the table. That, however, does not show that the six-year deal was taken off the table at that time. Indeed, all petitioner shows is that the plea offer did not change until

several months later, on October 11, 2004.

Petitioner filed the motion [for temporary release] on February 24, 2004, and a hearing was held on the motion two days later, at which time the court noted that petitioner had been offered a plea bargain for a six-year term and had not accepted it. Petitioner had opportunity right at that moment to state, in open court, that he wished to accept the plea bargain, but did not do so. The court denied the motion, and petitioner remained in custody and did not attend his father's funeral. Petitioner's attorney filed a petition for writ of habeas corpus in the Third District Court of Appeal on February 27, 2004, which was summarily denied that same day; his attorney did not seek further relief from the California Supreme Court on the matter. [website address omitted] The case then proceeded to preliminary hearing, at which petitioner was held to answer. Trial date was set but continued numerous times over a period of months and after numerous other motions, including ones to dismiss under Penal Code § 995 and for discovery, had been heard and decided. As noted above, it was not until October 11, 2004, that petitioner shows that the plea bargain was changed to instead be an offer of 12 years 8 months. Thereafter, petitioner's attorney was relieved and another appointed, and months after that, on February 2, 2005, petitioner chose to enter into the 12-years-8-months plea bargain.

Petitioner fails to show that the prosecutor was motivated to ultimately change the plea bargain months after his motion for release had been denied, specifically because he had filed that motion. Rather, the prosecutor waited until months after the preliminary hearing and other motions had been made, at which time the evidence against petitioner could be assessed, to decide to withdraw the unaccepted offer and increase the punishment offered in the bargain. During the time before the offer of six years was withdrawn, petitioner could have moved to accept the offer, but did not do so. That the ultimate withdrawal of the six-year offer and replacement of it with an offer for twice the length of that offer had any connection to petitioner's filing a motion for release to attend his father's funeral, which had long been denied and was not an issue in the case at all, is simply not shown.

Nor was appellate counsel ineffective in failing to raise this claim on appeal, as no vindictive prosecution claim was ever raised at the trial court level, rendering the matter waived on appeal (*Edwards, supra*).

Nor does petitioner show that his trial counsel failed to advise him that the plea offer would be withdrawn if he moved for release to attend his father's funeral. Indeed, to the contrary, petitioner attaches trial counsel's letter, stating that trial counsel told petitioner that

> if he went forward with the motion for release that the six-year deal would be off the table, and petitioner stated he understood that and demanded that the motion be filed. Regardless, there was no prejudice, because at the hearing on the motion for release, the six-year bargain was noted and petitioner had an opportunity to accept the bargain in open court; petitioner did not do so then or at any time thereafter in the ensuing months before the bargain was changed.
>
> Nor is this claim cognizable on habeas corpus, in any event. Petitioner does not claim that his <u>trial counsel</u> was ineffective in failing to file a vindictive prosecution claim. As such, because the claim was not raised in the trial court, it is <u>barred</u> from habeas corpus review (*In re Seaton*, 34 Cal.4th 193 (2004)). [underscoring original.]

(Lodged Doc. 6 at 1-3.)

The undersigned agrees with the Respondent that the first federal habeas claim, prosecutorial vindictiveness, even if it was not procedurally barred, should be denied on the merits because the record simply does not support Mr. Bobbit's claim. The undersigned agrees with the superior court that Mr. Bobbit fails to show the required link between the prosecutor's changed plea offer and Mr. Bobbit's motion for temporary release. Pursuant to 28 U.S.C. § 2254(e)(1), if a habeas petitioner is in state custody pursuant to a state court judgment, the determination of a factual issue made by a state court shall be presumed to be correct. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), citing 28 U.S.C. § 2254(e)(1). The facts do not support finding vindictive prosecution.

Mr. Bobbit's second federal habeas claim, that trial counsel was ineffective for failing to raise this claim, is similarly without merit. *Strickland v. Washington*, 466 U.S. 668 (1984) ordinarily applies to claims of ineffective assistance of counsel

at the plea hearing stage. *Wright v. Van Patten*, __ U.S. __, 128
S. Ct. 743, 746 (2008); *see Hill v. Lockhart*, 474 U.S. 52, 58
(1985)("[T]he two-part *Strickland v. Washington* test applies to
challenges to guilty pleas based on ineffective assistance of
counsel").

    *Strickland's* two-pronged test requires a showing of deficient
performance and prejudice to the defendant. *Strickland*, 466 U.S.
at 688-689. To satisfy the first prong, a petitioner must show
that, considering all the circumstances, counsel's performance
fell below an objective standard of reasonableness. (*Id.*, at 688.)
This requires identifying the acts or omissions that are alleged
to not have been the result of reasonable professional judgment.
(*Id.*, at 690.) The federal court then determines whether, in
light of all the circumstances, the acts or omissions were outside
the wide range of professional competent assistance. (*Id.*) In
making this determination, there is a strong presumption "that
counsel's conduct was within the wide range of reasonable
assistance, and that he exercised acceptable professional judgment
in all significant decisions made." *Hughes v. Borg*, 898 F. 2d 695
(9th Cir. 1999), citing *Strickland*, 466 U.S. at 689.

    Second, a petitioner must prove prejudice. See
*Strickland,* 466 U.S. at 693. Prejudice is established when "there
is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
(*Id.* at 694.) A reviewing court "need not determine whether
counsel's performance was deficient before examining the prejudice
suffered by the defendant as a result of the alleged deficiencies.

. . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F. 3d 949, 955 (9th Cir. 2002), quoting *Strickland*, 466 U.S. at 697.

Mr. Bobbit fails to establish ineffectiveness by his trial counsel because he does not show he suffered any prejudice. As the superior court pointed out following habeas review, at the hearing on the motion for temporary release, Mr. Bobbit had the opportunity to accept the prosecutor's offer of a six-year term in open court, but did not do so, either then "or at any time thereafter in the ensuing months before the bargain was changed." (Lodged Doc. 6 at 3.) Mr. Bobbit does not establish the merits of a vindictive prosecution claim, nor does he show any prejudice resulting from trial counsel's representation as required by *Strickland*. Federal habeas claim two should be dismissed on the merits.

Mr. Bobbit's third habeas claim, that appellate counsel was ineffective for failing to argue vindictive prosecution, also fails. As the superior court pointed out, Mr. Bobbit waived his claim of ineffective assistance by appellate counsel based on prosecutorial vindictiveness by failing to raise the issue vindictive prosecution in the trial court. The superior court cites *People v. Edwards*, 54 Cal.3d 787, 827-828 (1991) as support. (Lodged Doc. 6 at 2.)

The superior court is correct. In *Edwards*, *supra*, the court stated:

"[B]ecause a claim of discriminatory prosecution generally rests upon evidence completely extraneous

to the specific facts of the charged offense, we
believe this issue should not be resolved upon
evidence submitted at trial, but instead should be
raised . . . through a pretrial motion to dismiss."
*Murgia v. Municipal Court*, 15 Cal.3d 286, 293-294,
fn. 4 (1975). This rationale applies to claims of
vindictive prosecution. (See also *People v. Toro*, 47
Cal.3d 966, 976 (1989)[defendant must object to
amendment of information at trial to preserve a
lack-of-notice-objection]; *People v. Sperl*, 54 Cal.
App. 3d 640, 656-657 (1976).

. . .

In *In re Bower*, *supra*, 38 Cal.3d at pages 874-877,
and *Twiggs v. Superior Court*, *supra*, 34 Cal.3d at
pages 369-374, we found a presumption of
vindictiveness when charges were increased after the
assertion of constitutional rights *and after jeopardy
had attached*. As stated in *Bower, supra*, "The timing
of the prosecutor's action is important because '[a]
prosecutor should remain free before trial to exercise
the broad discretion entrusted to him to determine the
extent of the societal interest in prosecution. An
initial decision should not freeze future conduct [Fn.
omitted.]'.

*People v. Edwards*, 54 Cal.3d at 827-828.

Mr. Bobbit cannot establish prosecutorial vindictiveness in

violation of due process; accordingly, he cannot establish trial

or appellate counsel ineffectively represented him on this basis.

Nor does he establish prejudice from his representation as

required by *Strickland*. Mr. Bobbit's federal claims two and three

should be dismissed because they are without merit.

**C.   Federal claims four, five and six - Blakely error**

Mr. Bobbit argues in claim four that the trial court

violated his rights under the Sixth and Fourteenth Amendments by

imposing an upper term sentence in violation of *Blakely*, *supra*,

i.e., based on the court's, rather the jury's, determination of

aggravated circumstances.  (Ct. Rec. 20 at 6.)   As the Third

Appellate District noted on direct appeal, in the last reasoned

decision on this issue:

> . . . At the sentencing hearing, defense counsel asked the court to impose a midterm sentence rather than the upper term the probation department recommended for count one. Defense counsel did not, however, argue that the court did not have the authority to impose an upper term sentence absent jury findings that one or more aggravating factors existed. *Blakely v. Washington, supra,* 542 U.S. 296 was decided on June 24, 2004. The negotiated disposition was placed on the record on February 2, 2005, and sentencing took place on March 2, 2005, both of which occurred well after the highly publicized decision, which dispels any doubt that the issue was not preserved through the oversight of defense counsel.

> On this record, we conclude as a matter of law that the plea agreement did not preserve, either at sentencing or on appeal, the issue that the court did not have the authority to impose an upper term sentence in the absence of a jury finding of one or more aggravating circumstance(s). [Fn. 2 omitted.]

(Lodged Doc. 2 at 4-5.)

The court's omitted footnote [fn 2] indicates that, even if the court were to decide the matter on the merits, they would reject defendant's argument based on *People v. Black*, 35 Cal.4th 1238, 1244, 1254 (2005)(*Black I*.)

Interestingly, *People v. Black*, 41 Cal.4th 799 (*Black II*), issued in 2007, followed the decision in *Cunningham v. California*, 594 U.S. 270 (2007), where the United States Supreme Court disagreed with the California court's initial decision (*Black* I). However, for purposes of this habeas petition, *Black II* does not mandate a different result.

In *Black II*, the California Supreme Court noted:

> The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)." (*Rita v. United States* (2007) 551 U.S. 338). For this reason, we agree with the Attorney General's contention that as

long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial.

*People v. Black*, 41 Cal.4th 799 (2007)(*Black II*).

Mr. Bobbit's fourth claim, that he was sentenced in violation of *Blakely*, is without merit. Mr. Bobbit gave up his right to a jury trial – a jury's determination of any issue, on the record before he changed his plea. (Lodged Doc. 19 at 12.) Mr. Bobbit's counsel conceded at the sentencing hearing that the probation report listed under circumstances in aggravation "that my client's crimes are numerous. We do not deny that." (Lodged Doc. 19 at 21.) The sentencing judge stated: "the court does believe that, in light of the defendant's many priors, his multiple prior prison terms," the 12 year, 8 month term is appropriate. (Lodged Doc. 19 at 22.) Even if *Blakely* applied to changed pleas, the sentencing judge appropriately relied on Mr. Bobbit's conceded aggravating circumstances of multiple prior convictions and prison terms. These aggravating circumstances clearly rendered Mr. Bobbit eligible for the upper term the court imposed.

Mr. Bobbit is unable to establish any error with respect to the trial court's sentencing. Accordingly, federal habeas claim four should be dismissed.

Similarly, Mr. Bobbit's fifth federal claim, that he did not "waive or forfeit his right to a jury on aggravating circumstances" is plainly unsupported, as Mr. Bobbit waived his right to a jury trial in open court, as noted. (See Lodged Doc. 19

at 12.)  Mr. Bobbit's fifth federal habeas claim should be dismissed because it is unsupported by the record.

Mr. Bobbit's sixth and final federal habeas claim is that trial counsel was ineffective when he failed to demand a jury trial on aggravating circumstances, or when he failed to object to a judicial determination of aggravating circumstances.  These claims fail because: (1) Mr. Bobbit personally waived his right to jury trial in open court; (2) he agreed he has numerous prior convictions, and (3) Mr. Bobbit shows no prejudice resulting from trial counsel's representation as required by *Strickland*.  As noted, Mr. Bobbit plead no contest to two of five original counts, and obtained an agreement to a recommended sentencing lid of 12 years, 8 months - even though he faced 25-years-to-life, or more, if convicted after trial. Because Mr. Bobbit does not establish prejudice, his sixth federal habeas claim should be dismissed.

Mr. Bobbit also does not show that any of the state court decisions were contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence, as required by habeas jurisprudence.  *See e.g., Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Moses v. Payne*, 543 F. 3d 1090, 1097-1098(9th Cir. 2008).  Accordingly, Mr. Bobbit's habeas allegations are without merit.

**V.   CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** the Petition for Writ of Habeas Corpus (Ct. Rec. 1, 20) be **DENIED**.

**OBJECTIONS**

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS

1   Any party may object to the magistrate judge's proposed
2 findings, recommendations or report within ten (10) days following
3 service with a copy thereof.  Such party shall file with the Clerk
4 of the Court all written objections, specifically identifying the
5 portions to which objection is being made, and the basis therefor.
6 Attention is directed to Fed. R. Civ. P. 6(e), which adds another
7 three (3) days from the date of mailing if service is by mail.  A
8 district judge will make a de novo determination of those portions
9 to which objection ids made and may accept, reject, or modify the
10 magistrate judge's determination.  The district judge need not
11 conduct a new hearing or hear arguments and may consider the
12 magistrate judge's record and make an independent determination
13 thereon.  The district judge may also receive further evidence or
14 recommit the matter to the magistrate judge with instructions.
15 See 28 U.S.C. § 636 (b) (1) (C) , Fed. R. Civ. P. 73, and LMR 4,
16 Local Rules for the Eastern District of Washington.  A magistrate
17 judge's recommendation cannot be appealed to a court of appeals;
18 only the district judge's order or judgment can be appealed.

19   The District Court Executive **SHALL FILE** this report and
20 recommendation and serve copies of it on the referring judge and
21 the parties.

22        **DATED** this 21st day of May, 2009.

23                          s/James P. Hutton

24                     JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE
25

26

27

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 25 -